Argued and submitted December 2, 1980, affirmed June 30, 1981

# STATE OF OREGON,
*Petitioner,*

*v.*

# MICHAEL EDWARD BLOCKER,
*Respondent.*

## (CA 15586, SC 27255)

630 P2d 824

Karen H. Green, Assistant Attorney General, Salem, argued the cause for petitioner. With her on the briefs were James M. Brown, Attorney General, John R. McCulloch,

Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Gary M. Carlson, Portland, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, and Peterson, Associate Justices.

LENT, J.

## LENT, J.

Defendant was charged, tried and convicted of possessing a "billy" in violation of ORS 166.510(1):

"(1) Except as provided in ORS 166.515 or 166.520, *any person who* manufactures, causes to be manufactured, sells, keeps for sale, offers, gives, loans, carries or *possesses* an instrument or weapon having a blade which projects or swings into position by force of a spring or other device and commonly known as a switch-blade knife or *an instrument or weapon commonly known as a* blackjack, slung shot, *billy,* sandclub, sandbag, sap glove or metal knuckles, or who carries a dirk, dagger or stiletto *commits a Class A misdemeanor.*" (Emphasis added.)

In the trial court, defendant challenged the constitutionality of the statute. For the manner and content of that challenge, we quote from the state's petition for review in this court:

"Prior to trial, defendant orally demurred to the information on the ground that the statute is unconstitutionally vague and overbroad because the term 'billy' is not defined and could apply to any wooden instrument whether or not used as a weapon. * * * Following the state's case, defendant moved for judgment of acquittal on the ground that the statute is unconstitutionally vague and overbroad."

In their briefs in the Court of Appeals, the parties continued the debate along those lines. After argument and submission of this case in that court, the parties requested that court to hold decision in abeyance, pending decision by this court upon review of the decision of the Court of Appeals in *State v. Kessler,* 43 Or App 303, 602 P2d 1096 (1979). The request was granted and, following our decision in *State v. Kessler,* 289 Or 359, 614 P2d 94 (1980), the Court of Appeals, in a per curiam opinion, reversed the conviction of the defendant in the case at bar, citing our decision in *Kessler. State v. Blocker,* 47 Or App 376, 614 P2d 1216 (1980).

We allowed the state's petition for review, ORS 2.520, 290 Or 1 (1980), to consider the argument asserted in the trial court that the statute is unconstitutional for vagueness and overbreadth and to consider whether the statute, as applied to the facts of this case, violates the

right to bear arms guaranteed by Or Const Art I, § 27,[1] (hereinafter § 27) as interpreted by this court in *State v. Kessler, supra.*

## Facts

In the light most favorable to the state, the record discloses the following to be the facts. A police officer observed the defendant driving at 45 miles per hour in a 25-mile-per-hour zone and caused defendant to stop the car. On approaching the car, the officer noticed an open, and partially full, beer bottle in the car. On reaching into the car to take possession of the bottle, the officer observed a wooden object on the floor of the car. He recognized the object as a "standard billy club." He asked the defendant for what he used the object, and defendant replied that he used it to hit people who hassled him "up side the head."

At trial the defendant testified that the object was made by him in a high school shop class and was intended to be a lamp base but was never finished. The object is made of soft wood and has been turned on a lathe. It weighs about six ounces and is just under 12 inches in length.[2]

## Right to Bear Arms

In *State v. Kessler, supra,* this court held that a billy is a club and, as a club, is within the meaning of the term "arms for the defence of themselves" in § 27. The ultimate holding of that case on the facts there presented was that a person's right simply to possess a billy in his home was constitutionally protected from statutory infringement. We are now asked whether mere possession of a billy outside the home is protected by § 27.

---

[1] Or Const Art I, § 27 provides:

"The people shall have the right to bear arms for the defence of themselves, and the State, * * *."

[2] As noted in the text, the officer testified that he recognized the object as a "standard billy club," and the defendant once referred to it in his testimony as a "billy club." Other than that, there is no evidence as to what a "billy" may be. There was no evidence whatsoever as to what may be "commonly known as a billy." There was no evidence to compare this object in terms of weight, length or hardness of wood to that night stick we see being carried by policemen as apparently authorized by ORS 166.520:

"(1) Peace officers are not prohibited from carrying or possessing an instrument or weapon commonly known as a blackjack or billy."

The text of the constitution is not so limited; the language is not qualified as to place except in the sense that it can have no effect beyond the geographical borders of this state.

The state argues that for this court to hold that possession of a billy in a public place is constitutionally protected would be an unwarranted extension of our holding in *Kessler*. We do not agree. In *Kessler* we started from the premise that under § 27 a person has a right to bear arms for defense of self. We said:

> "[W]e hold that Article I, section 27, of the Oregon Constitution includes a right to possess certain arms for defense of person and property."

289 Or at 371, 614 P2d at 100. We then moved from that general proposition to the more particular one that a person had the constitutional right to have a billy in his home for defense.[3]

The Court of Appeals implicitly recognized the breadth of our holding in *Kessler* when it reversed this defendant's conviction, citing that case as sole reason for its decision. The legislature is forbidden by the constitution from outlawing the mere possession of a billy.

What we held in *Kessler*, and iterate here, seems to raise concerns on the part of the state which we believe to be groundless. Our decision in neither case goes to the question of permissible legislative regulation of the manner of possession or of regulation of the use of the billy. Indeed, in *Kessler*, we expressly noted the possibility of that kind of regulation. See the discussion in 289 Or at 369-370, 614 P2d 94, 99.

This state has several such regulatory statutes, with which we are not concerned in this case: ORS 166.220(1) prohibiting possession of a dangerous weapon

---

[3] Perhaps the state's misconception as to the extent of our holding in *State v. Kessler*, 289 Or 359, 614 P2d 94 (1980), is occasioned by our noting of that defendant's concession concerning the power of the legislature to regulate the possession of the club:

"The defendant concedes that the legislature could prohibit carrying a club in a public place in a concealed manner * * *."

289 Or at 372, 614 P2d at 100.

with intent to use such weapon unlawfully against another; ORS 166.240, prohibiting carrying certain weapons concealed about one's person;[4] ORS 166.250, prohibiting carrying any firearm concealed upon the person or within any vehicle without a license to do so.

On the other hand, ORS 166.510, with which we are here concerned, is not, nor is it apparently intended to be, a restriction on the manner of possession or use of certain weapons. The statute is written as a total proscription of the mere possession of certain weapons, and that mere possession, insofar as a billy is concerned, is constitutionally protected.

There is but one loose end to consider. Defendant did not cite § 27 in making his constitutional attack on the statute. As noted earlier, he attacked the statute as being "vague" and "overbroad."

Confusion is created by linking the terms "vague" and "overbroad" as if they meant the same kind of constitutional attack, based on the same constitutional premises. They do not. The confusion could be avoided if counsel would heed our repeated admonitions to quote the constitutional clauses on which they base their claims. *See, Sterling v. Cupp,* 290 Or 611, 613, 625 P2d 123, 126, n 1 (1981), for a recent collection of citations to cases in which we have asked that counsel refer to the text of constitutional provisions on which they rely.

■ "Vagueness" means that a penal law is stated in terms from which those to whom it is addressed—potential defendants, prosecutors, courts, and jurors—cannot discern what conduct the lawmaker did or did not mean to include in the prohibition. Such a failure of communication in penal laws has been held to contravene Article I, section 21, of the Oregon Constitution because "they not only allow a court or a jury to define a crime but to do so after the fact," *Megdal v. Board of Dental Examiners,* 288 Or 293, 298, 605 P2d 273 (1980), citing *State v. Blair,* 287 Or 519, 601 P2d 766 (1979); *State v. Hodges,* 254 Or 21, 457 P2d 491 (1969),

---

[4] Interestingly enough, ORS 166.240 lists several weapons specifically, and a billy is not among them, although it may be within the statute under the general language therein contained.

and to deny due process under the Fourteenth Amendment because they do not give fair notice of what they proscribe. *See,* sources cited in *Megdal,* 280 Or at 299 and note 5.

■ An "overbroad" law, as that term has been developed by the United States Supreme Court, is not vague, or need not be. Its vice is not failure to communicate. Its vice may be clarity. For a law is overbroad to the extent that it announces a prohibition that reaches conduct which may not be prohibited. A legislature can make a law as "broad" and inclusive as it chooses unless it reaches into constitutionally protected ground. The clearer an "overbroad" statute is, the harder it is to confine it by interpretation within its constitutionally permissible reach.

■ It follows that to attack a statute as "overbroad" necessarily implies that it impinges on some constitutionally protected right other than fair notice or "due process." Unlike "vagueness," the vice of "overbreadth" is not necessarily limited to penal laws, and to the extent that an overbroad law forbids what may not constitutionally be forbidden, it is invalid as such without regard to the facts in the individual case. *State v. Blair, supra; cf. Lewis v. New Orleans,* 415 US 130, 94 S Ct 970, 39 L Ed 2d 225 (1973).

■ Thus defendant's attack on ORS 166.510 as "overbroad" impliedly asserted that it reached beyond permissible limits to impinge on a constitutionally protected right. This could only be the right to bear arms, although its source was not identified, as it should have been. The question is whether we should reject the attack for failure to cite its source. The fact is that we decided *State v. Kessler, supra,* after the present case had been tried and appealed. The case was held by the Court of Appeals for our disposition of *Kessler.* That court then decided it upon a correct interpretation of our decision in *Kessler.* The state's petition for review asked us to consider whether the Court of Appeals had misapplied our interpretation of § 27.

In these circumstances, we conclude that it is proper for us to consider defendant's "overbreadth" attack to mean that the statute swept so broadly as to infringe rights that it could not reach, which in this setting means

the right to possess arms guaranteed by § 27. The Court of Appeals correctly applied that section on the authority of *State v. Kessler, supra.* Its decision is affirmed.

Affirmed.