Argued and submitted September 20, reversed and remanded
for trial December 21, 1983, reconsideration denied March 9,
petition for review allowed June 5, 1984 (297 Or 272)
See later issue Oregon Reports

## STATE OF OREGON,
*Appellant,*

*v.*

## KENNETH ALLEN MOYLE,
*Respondent.*

## (DA 240844-8208; CA A28286)

673 P2d 1366

Jan Peter Londahl, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Solicitor General, Salem.

Marcia Levy, Metropolitan Public Defender, Portland, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendant is charged with two counts of "conveying a telephonic threat to inflict serious physical injury" in violation of Oregon's harassment statute. ORS 166.065(1)(d). In the first count, he is accused of threatening to kill the victim and her family and to bomb her home and car. In the second count, he is accused of threatening to kill a different victim "and children and to kidnap and rape children."

Before the time set for trial, defendant filed a written demurrer, challenging the statute on a variety of grounds. After legal argument was heard on the issues, the trial judge entered a letter opinion agreeing with defendant on his principal contention that the statute violated Article I, section 8, of the Oregon Constitution. He then dismissed the two charges against defendant. The state appeals. We are unable to accept the proposition that the alleged threats in this case qualify as protected speech. Accordingly, we reverse.

ORS 166.065(1)(d) provides:

"(1)   A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, the actor:

"* * * * *

"(d)   Subjects another to alarm by conveying a telephonic or written threat to inflict serious physical injury on that person or to commit a felony involving the person or property of that person or any member of that person's family, which threat reasonably would be expected to cause alarm."

This statute[1] was enacted in 1981 to replace the telephone harassment statute, ORS 166.065(1)(c) (*amended by* Or Laws 1981, ch 468, § 1), which had been declared unconstitutional in *State v. Blair,* 287 Or 519, 601 P2d 766 (1979). The old statute provided:

"(1)   A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he:

"* * * * *

"(c)   Communicates with a person, anonymously or otherwise, by telephone, mail, or other form of written communication, in a manner likely to cause annoyance or alarm."

---

[1] Violation of ORS 166.065(1)(d) is a Class B misdemeanor.

The Supreme Court determined that that statute was unconstitutionally vague. However, the court did not reach the freedom of speech issues raised in this appeal.

Defendant argues, as he did below, that ORS 166.065(1)(d) is unconstitutional, because it conflicts with Article I, section 8, of the Oregon Constitution. As the primary source for that assertion, he relies on *State v. Robertson,* 293 Or 402, 649 P2d 569 (1982), in which the Supreme Court held that ORS 163.275, the coercion statute, was overbroad and therefore invalid. Defendant also argues that the statute remains impermissibly vague despite the legislative response to the *Blair* case. The vagueness argument was specifically rejected by the trial court.

Defendant contends that, because the First Amendment claim was not reached by the trial court, it cannot be raised on appeal. Without addressing the merits of that contention, we note that, in this context, Article I, section 8, offers greater free speech protections than the First Amendment. *See State v. Robertson, supra.* Consequently, reliance on the federal Constitution would not cause us to reach a different result in resolving this case.

■ Article I, section 8, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever, but every person shall be responsible for the abuse of the right."

Recently, the Supreme Court has said that

"* * * this guarantee forecloses the enactment of prohibitory laws, at least in the form of outright prohibitions backed by punitive sanctions, that in terms forbid speech or writing 'on any subject whatever,' unless it can be shown that the prohibition falls within an original or modern version of a historically established exception that was not meant to be ended by the liberating principles and purposes for which the constitutional guarantees of free expression were adopted. * * *" *In re Lasswell,* 296 Or 121, 124, 673 P2d 855 (1983).

Only if it passes this initial test is a statute open to scrutiny of its application to particular facts or for overbreadth. *State v. Robertson, supra,* 293 Or at 412.

■    The state asserts that ORS 166.065(1)(d) is confined within a historically recognized exception. As evidence of this assertion, it offers the English Waltham Black Act of 1723, which prohibited threats to commit felonies made under certain circumstances. Although that Act was intended principally to deal with conduct somewhat different than the conduct proscribed by the statute under scrutiny here, it nevertheless prohibited speech in the form of threats to commit felonies. This fact, together with our inability to find present-day authority holding that speech of the kind involved here is protected, convinces us that ORS 166.065(1)(d) does indeed fall within a modern version of a historically established exception.

■    That conclusion allows us to advance to the next step in the analysis and examine ORS 166.065(1)(d) for overbreadth.

> "* * * [A] law is overbroad to the extent that it announces a prohibition that reaches conduct which may not be prohibited. A legislature can make a law as 'broad' and inclusive as it chooses unless it reaches into constitutionally protected ground. * * *" *State v. Blocker,* 291 Or 255, 261, 630 P2d 824 (1981).

Under Article I, section 8, this means that the legislature is allowed to infringe on the right to speak and write freely, only to the extent that it does not intrude into an area of constitutionally protected speech. In *Robertson,* the coercion statute, ORS 163.275, was declared unconstitutional due to its overbreadth. The statute prohibited the actor from compelling or inducing another to comply with a demand through the use of several enumerated means.[2] It was found to be at least facially constitutional, because it focused on the forbidden effect of frightening another person into a nonobligatory and undesired course of conduct. However, its prohibitions were determined to reach protected communications, so it was deemed overbroad.[3] The Supreme Court said:

---

[2] The coercive measures which were prohibited by ORS 163.275 included physical injury, property damage and exposing or publicizing facts which tended to expose some person to hatred, contempt or ridicule.

[3] The types of protected speech to which ORS 163.275 was deemed to extend included:

> "* * * situations in which one man tells another: 'If you don't quit making love to my wife, I'm going to tell your wife,' or someone proposes to disclose an airline

"A notable characteristic of ORS 163.275 is that it requires neither the conduct demanded of the victim nor the action threatened in case of refusal to be wrongful. It therefore does not fit into the constitutional analysis of solicitation, conspiracy, advice, or other verbal participation in another's criminal act, nor is it confined to threats of crimes or torts against an uncooperative victim, as in a robbery or rape. * * *" 293 Or at 418.

In contradistinction, ORS 166.065(1)(d) is directed only at instances in which the action threatened is itself wrongful. By its very terms, it is only concerned with threatened commission of felonies and infliction of "serious physical injuries." Inasmuch as any intentional infliction of serious physical injury would most certainly be felonious conduct constituting first or second degree assault, ORS 166.065(1)(d) is directed only at threats to commit felonies. Accordingly, it cannot be overbroad unless threats to commit some felonies are protected speech and threats to commit others are not. There is no authority which holds that a threat to commit rape, murder or other felonies is protected speech under the Oregon Constitution. In fact, the closest authority on this precise subject is *State v. Hamre,* 247 Or 359, 364, 429 P2d 804 (1967), in which the Supreme Court discussed the strong policies favoring a statute like ORS 166.065(1)(d):

"* * * There would be a clear public policy in making unlawful statements of an intention to commit a felony which tend to inflict fear in another. First, members of the public have a right to go about their business without apprehension; second, apprehensive persons commonly take personal action against the source of their fear. This leads to controversy, violence and breaches of the peace."

■ ■ Threats of the kind contemplated by ORS 166.065(1)(d) are not protected speech. The threats which are prohibited by the statute are ones involving specific wrongful acts. Accordingly, we hold that ORS 166.065(1)(d) is not unconstitutional on its face or in this application.

Defendant also contends that ORS 166.065(1)(d) is void for vagueness. Vague penal laws are offensive for a

---

pilot's secret illness if he does not get medical attention, or a politician's embarrassing past if he does not withdraw his candidacy from office. * * *" *State v. Robertson, supra,* 293 Or at 418.

variety of reasons, which were summarized by the Supreme Court in *Grayned v. City of Rockford,* 408 US 104, 108-09, 92 S Ct 2294, 33 L Ed 2d 222 (1972):

> "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications." (Footnotes omitted).

The trial court found the language of ORS 166.065(1)(d) to be clear and specific enough to withstand a vagueness challenge. We agree. The language employed does not suffer from the same weaknesses as its predecessor. It now proscribes only threats of serious physical harm and felonies made with an intent to harass, annoy or alarm. Those proscriptions are clear and understandable and do not delegate "basic policy matters" to police, judges or juries.

Reversed and remanded for trial.