# STATE OF OREGON,
*Appellant,*

*v.*

# CLARENCE VICTOR EISENBARTH,
*Respondent.*

(87-12157-C; CA A45765)

762 P2d 343

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

James A. Wickre, Medford, filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

In this prosecution for driving under the influence of intoxicants, ORS 813.010, the state appeals the allowance of defendant's motion to suppress evidence. We reverse.

The trial court found the facts:

"Trooper Tow observed the car driven by the Defendant . on North Pacific Highway in the area known as the 'Big Y.' The officer indicated that the vehicle driven by the Defendant was going slower than the posted 35 mile per hour speed limit. Trooper Tow estimated that Mr. Eisenbarth's speed was 20 to 25 miles per hour at this location. As the officer passed the Defendant the officer was able to get a look at the Defendant's personal appearance and noticed that his eyes were droopy, his mouth was slack-jawed, and he was somewhat slumped in the driver's seat. These characteristics led the officer to conclude that the defendant was possibly drunk or intoxicated. After passing the Defendant, the officer noticed that the Defendant moved to the right shoulder of Highway 99 and proceeded in that fashion for approximately 100-200 yards prior to making a right-hand turn into the U-Haul parking lot. Feeling that the driver had taken an uncommonly long period of time on the shoulder, Trooper Tow returned to the scene and followed Mr. Eisenbarth into the parking lot whereupon the stop was made and the evidence was obtained which resulted in the issuance of a citation for Driving Under the Influence of Intoxicants. Trooper Tow indicated that he had noted no weaving or other erratic driving on behalf of Mr. Eisenbarth and could not recall any specific problems with any lane changes or any unsignaled turns.

"* * * * *

"[T]he area in which Mr. Eisenbarth operated his vehicle is not so clearly marked as to give rise to a potential traffic infraction for failing to stay within his lane."

The trial court believed that it was compelled by *State v. Kimmel,* 82 Or App 486, 728 P2d 894 (1986), to suppress the evidence. However, the issue in that case of whether there was reasonable suspicion to justify a stop need not be reached unless the threshold question of whether there was a stop within the meaning of ORS 131.605(5) is answered affirmatively.[1] *State v. Porter,* 31 Or App 229, 570 P2d 111

---

[1] Although we are bound by the trial court's finding of historical facts, we are not bound by its legal conclusion that there was a stop. *See State v. Warner,* 284 Or 147, 585 P2d 681 (1978); *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

(1977), *rev den* (1978). ORS 131.605(5) provides:

> "A 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place."

A person is "restrained" when, in view of all the circumstances, a reasonable person would have believed that he was not free to leave. *State v. Spenst,* 62 Or App 755, 662 P2d 5, *rev den* 295 Or 447 (1983). Mere inquiry by a police officer without restraint of liberty is not a "stop" and requires no justification. *State v. Warner, supra* n 1, 284 Or at 161; *State v. Jackson,* 91 Or App 425, 755 P2d 732, *rev den* (1988).

The officer testified that he "made contact" as defendant was getting out of his car in the U-Haul parking lot. It is clear that defendant had pulled into the lot and had stopped of his own volition. The officer had turned around after seeing defendant drive into the lot. He did not recall whether he turned on his overhead lights. However, he noted that, on occasion, as a matter of courtesy, he would not turn the lights on in a business parking lot if he felt that there was no need to do so. We conclude that the officer did not restrain defendant's liberty by approaching his vehicle and speaking to him.

Because the record does not support the conclusion that there was a stop, there was no basis for suppressing the evidence.

Reversed and remanded.