Argued and submitted January 18, reversed and remanded for a new trial
April 12, 1989

## STATE OF OREGON,
*Respondent,*

*v.*

## ALLEN JOHN JOHNSON,
*Appellant.*

### (87-682; CA A47738)

772 P2d 426

Arthur P. Stangell, Oregon City, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

## RIGGS, J.

Defendant appeals his conviction for possession of a Schedule II controlled substance, ORS 475.992(4)(b), assigning as error the trial court's denial of his motion to suppress evidence. We reverse and remand.

Defendant was a passenger in a car stopped by police for a traffic violation. While one officer was questioning the driver of the car, the officer asked a second officer at the scene to find out who the passenger was. The second officer approached defendant, who provided his name and identification. A check of defendant's record revealed no warrants for his arrest. While the officer was talking with defendant, defendant turned slightly in his seat and the officer saw a knife sheath partially covered by defendant's jacket. Suspecting that defendant might be carrying a concealed weapon, the officer removed defendant from the car and conducted a frisk, discovering that defendant was wearing a short jacket and carrying a knife in a sheath on his belt. The officer then conducted a further "pat-down" of defendant, discovering two bulky pouches. The officer handcuffed defendant, put him in the back of a patrol car and asked if he could search the pouches. Defendant initially refused to consent, but relented when the officer said that he would obtain a warrant authorizing the search. A search of the two pouches revealed drugs and drug paraphernalia.

■■ Defendant contends that the officer's initial questioning was conducted pursuant to an unlawful stop, because the officer had no reasonable suspicion before he approached defendant that defendant had committed any crime. ORS 131.615. Defendant errs in characterizing the officer's actions as a stop, however. The officer approached defendant only for the purpose of seeking information that might be helpful in identifying the driver of the car. The officer testified at the suppression hearing that before he observed the knife sheath, defendant would have been free to leave.[1] Without some

---

[1] The record does not reveal whether the officer performed the record check before he saw the knife sheath. If the officer used defendant's identification to obtain a record check, that action would convert the encounter into a stop. *State v. Smith,* 73 Or App 287, 292, 698 P2d 973 (1985). Such a stop on these facts would be unlawful, for the officer had no reasonable suspicion before he saw the knife that defendant had committed any crime. Our inability to determine this matter from the record is irrelevant, for a finding of an unlawful stop would merely provide another basis for the result in this case.

restraint of liberty, the questioning leading up to the officer's observation of the knife sheath constituted no more than mere conversation requiring no justification on the part of the state. *State v. Warner,* 284 Or 147, 161, 585 P2d 681 (1978); *State v. Eisenbarth,* 93 Or App 384, 387, 762 P2d 343 (1988).

■ Once the officer had observed the knife sheath under defendant's jacket, he removed defendant from the car and seized the knife. His "stop and frisk" procedure was justified by the officer's reasonable suspicion that defendant had committed the crime of carrying a concealed weapon. ORS 166.240(1).

■■ The results of the frisk, however, revealed that defendant had committed no crime. The officer testified that defendant wore a short leather jacket and carried a knife in a sheath on his belt. ORS 166.240(1) prohibits the carrying of a knife only if the knife is concealed. Neither the statute nor any prior case addresses the issue of whether a knife carried in a sheath at the waist is concealed, but we note that ORS 166.250(3) specifically provides that "[f]irearms carried openly in belt holsters are not concealed * * *." Like a gun in a holster, a knife carried openly in a sheath on the belt is not "concealed." *Cf. State v. Walton,* 18 Or App 603, 526 P2d 458, *rev den* (1974) (affirming on other grounds defendant's conviction for carrying a knife in a scabbard at the waist, but concealed beneath his coat). Once the officer discovered that defendant carried his knife openly in a sheath at his waist, he no longer had reasonable suspicion, let alone probable cause, to suspect defendant of wrongdoing. The reason for the officer's stop of defendant having dissipated, the subsequent arrest and search were unjustified and therefore illegal.[2] *State v. Castrejon,* 79 Or App 514, 520, 719 P2d 916 (1986); *State v. Barndt,* 68 Or App 755, 758 n 2, 683 P2d 166 (1984).

■ We turn to the issue of the validity of defendant's consent to the search of the pouches. Under both the Fourth Amendment and Article I, section 9, the state has the burden

---

[2] The state's argument that the officer searched defendant out of concern for his safety does not change the result. *State v. Messer,* 71 Or App 506, 509-10, 692 P2d 713 (1984). A suspect must be lawfully "stopped" before a "frisk" for weapons is permitted. ORS 131.625(1). The officer's concern for his safety "gave him no greater authority than any other person would have had." *State v. Messer, supra.*

in a criminal consent search case to prove, by clear and convincing evidence, that "the totality of the facts and circumstances show that consent was given by defendant's free will" and not as "a result of coercion, express or implied." *Schneckloth v. Bustamonte,* 412 US 218, 93 S Ct 2041, 36 L Ed 2d 854 (1983); *State v. Gaither,* 76 Or App 201, 204, 708 P2d 646 (1985). The same test applies where, as here, the defendant's alleged consent to search is accompanied by illegal police conduct, but "the burden on the police to show voluntariness * * * is greater than when no illegality has occurred." *State v. Kennedy,* 290 Or 493, 502, 624 P2d 99 (1981); *State v. Smith,* 73 Or App 287, 293, 698 P2d 973 (1985). We will suppress the evidence obtained by a consent search if "the consent was gained by exploitation of the illegality or [if] defendant's free will was tainted by the illegal police conduct." *State v. Kennedy, supra,* 290 Or at 501.

Defendant was subjected to an illegal arrest and an illegal search and was handcuffed and locked in the back of a patrol car before he gave his consent to the officer's search of the pouches. This case is similar to *State v. Glenn,* 83 Or App 650, 732 P2d 946 (1987). The totality of the circumstances indicates that the consent was elicited in a coercive atmosphere and that defendant's free will was tainted by the illegal police conduct. Defendant's motion to suppress should have been granted.

Reversed and remanded for a new trial.